IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

BETTY MARIE DRYE                                                                    PLAINTIFF

v.                                    No. 4:09CV00922 JLH

UNIVERSITY OF ARKANSAS FOR MEDICAL
SCIENCES by and through the UNIVERSITY OF
ARKANSAS BOARD OF TRUSTEES;
PHILIP BARONI; and PAM WHITLOCK                                        DEFENDANTS

## OPINION AND ORDER

Following her February 2009 termination from the University of Arkansas for Medical

Sciences, Betty Marie Drye commenced this action against UAMS, by and through the University

of Arkansas Board of Trustees and UAMS employees, Philip Baroni and Pam Whitlock, in both their

individual and official capacities.  Having amended her complaint in November 2010, Drye now

alleges that the defendants violated her due process rights, her right to equal protection, the

Rehabilitation Act, the Age Discrimination in Employment Act, and the Family and Medical Leave

Act.  The defendants have moved for summary judgment on these claims, Drye has responded, and

the defendants have replied to that response.  For the following reasons, summary judgment is

granted.

## I.

In 2004, UAMS hired Betty Marie Drye as a patient representative in the Jones Eye Institute,

a position that involved, among other things, supervising clinic clerical staff.  Drye was hired by,

worked under, and reported solely to clinic manager Judy Sims.  When Drye was hired, Philip Baroni

was the associate director of outpatient services at UAMS.  In that capacity, he supervised the

managers of various UAMS clinics (including the Institute).  Pam Whitlock was the Institute's clinic

supervisor.

In July 2007, UAMS hired Robert Harris to fill a new chief of ambulatory care position. Harris' job was to ensure better clinic operational efficiency, continuity, and collaboration between the various clinics and the College of Medicine Faculty Group Practice. Specifically, Harris focused on better patient communication, flow of patient care, employee teamwork, and morale. In early 2008, Harris appointed Dr. Chris Westfall as practice director for the Institute. Westfall acted as a liaison between the faculty group practice and the Institute, and he discussed with Baroni and Institute managers his desire to see better communication and streamlining of authority in daily Institute operations.[1]

In April 2008, Sims retired from her position and Baroni became interim clinic manager. Baroni served in that position until the fall, when Baroni, Westfall, and Harris decided that it was time to make some earlier proposed changes concerning the new Institute goals. Whitlock was then named to interim clinic manager. Shortly thereafter, the "interim" was removed, and she became

---

[1] Drye argues that, according to the U.S. Supreme Court in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), these facts should be disregarded because they are "self-interested uncorroborated statement[s] from an interested witness." Pl.'s Resp. to Def.'s Statement of Undisputed Facts, ¶ 7. Drye makes this same assertion concerning various other statements made by Baroni and Whitlock in their affidavits. Drye misreads *Reeves*. *Reeves* says that a district court in deciding a summary judgment motion "should review all of the evidence in the record," not just the evidence favoring the nonmoving party. *Reeves*, 530 U.S. at 150, 120 S. Ct. at 2110. The specific dicta to which Drye refers states that a court must, at minimum, give credence to a moving party's uncontradicted and unimpeached evidence that comes from disinterested witnesses. *Id.* at 151 ("[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"). *Reeves* does not bar a court from considering evidence from interested witnesses; it encourages courts to look at all the evidence available, provided that the court "may not make credibility determinations or weigh the evidence." *Id.* at 150. The facts that Drye contests on the basis of this argument alone are admitted because Drye has done nothing to controvert them as required by Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1.

clinic manager.[2]   In that position, Whitlock was given responsibility for overall clinic management–all technical and clerical employees reported directly to her.  Another employee, Kim Glaze, was then moved to Whitlock's former position as clinic supervisor.

During Drye's employment at the Institute–both before and after Sims' retirement–numerous complaints were made to management regarding Drye's harsh manner in communicating with patients and other employees.  Sims and others counseled Drye about these complaints and noted the issues in Drye's evaluations.  After Whitlock took over as clinic manager, she received several oral and written complaints about Drye from Institute personnel.

During early to mid-2008, Drye requested and received FMLA leave and discretionary catastrophic leave several times to care for her ailing mother.  The leave was intermittent, so Drye was present at work some of the time.  Drye also was approved for and took FMLA leave for her own medical issues from August 7, 2008, until September 8, 2008, when she returned to work. Altogether, Drye was given the maximum amount of FMLA leave.  On August 18, while Drye was on FMLA leave, Baroni met with Audrey Bradley, UAMS human resources employee relations manager, to discuss Drye.  According to Bradley's journal of the encounter, Baroni expressed his desire to redefine Drye's job description because Drye's work was behind.  Bradley then states in the journal that she advised Baroni that a person on FMLA leave is not responsible for work duties, so someone else should have been doing Drye's work.  Bradley also advised that she did not see a

---

[2] Baroni's affidavit states that he was the interim clinic manager until October 2008, when Whitlock took over the position.  Def. Ex. 2, ¶ 3.  Whitlock's affidavit, however, states that she took over as interim clinic manager in early September 2008, allowing Baroni to go back to his original position, and that she was not named the permanent clinic manager until November 2008.  Def. Ex. 3, ¶ 5.  This issue, however, is immaterial to the outcome of the action, as neither Baroni nor Whitlock has attempted to avoid liability on the basis of the timing of the transition.

reason to change Drye's job role.  Finally, Bradley determined from the conversation that Baroni was "wanting a[n] easy out" because Drye was a "problem child" and had not been dealt with by Sims.

Immediately upon Drye's September 2008 return, Baroni met with her to explain changes to her position that had been instituted while she was gone.  Baroni informed Drye that she no longer would have supervisory duties and that various job responsibilities would be changing, although her salary, benefits, title, and office space would remain the same.

On February 11, 2009, Glaze told Whitlock that three different employees had reported to her that Drye was pulling up in front of the Institute building, clocking in, leaving the building, and driving off in her car.  Whitlock confirmed the report with the employees.  On February 19, 2009, Whitlock observed that Drye clocked in at 8:03 a.m., left the building, and walked back in at 8:10 a.m.  Whitlock reported the incident to Baroni.  Whitlock and Baroni decided that Drye's actions constituted falsifying time records, which is gross misconduct under UAMS guidelines and which warrants immediate dismissal. Whitlock and Baroni then met with Drye in Whitlock's office, where they notified her that they considered her actions gross misconduct.  They proceeded to give Drye a notice indicating the reason for her termination and advised her of the right to seek a grievance with the UAMS employee relations officer. Whitlock and Baroni never shared the Employee Disciplinary Notice or Separation Form with anyone inside or outside of UAMS, and no potential employers have requested the information from Drye.[3]  Drye's position was never filled.

---

[3] Drye disputes these facts, but cites to no evidence other than to say the documents were discussed in an "unemployment hearing."  Pl.'s Resp. to Def.'s Statement of Undisputed Facts, ¶ 30.  Drye does not specify what hearing this was, with whom it was, where it took place, or, most important, where it is in the record.  Thus, she has failed to controvert the statement of fact under Local Rule 56.1 and it is deemed admitted.

After her termination, Drye brought a charge of age discrimination against UAMS with the Equal Employment Opportunity Commission, alleging that younger employees who had engaged in the same act had not been terminated.  The EEOC investigated Drye's claim and sent Drye a preliminary letter confirming the basic details of the incident and that a factual dispute existed concerning whether there were other similarly situated employees.  Drye also contacted Charles White, the UAMS vice chancellor for employee relations, and met with him on March 6, 2009.  At that meeting, White gave her a complaint form.  The parties dispute whether Drye filled out the form and submitted it back to White.[4]

On Sept. 2, 2009, the EEOC issued Drye a Notice of Right to Sue letter, declining to pursue its inquiry further.  Drye filed her original complaint *pro se* on December 9, 2009.  Drye obtained legal representation and filed an amended complaint on November 15, 2010.  On January 4, 2011, this Court granted the defendants' motion to dismiss Drye's ADEA and section 1983 claims for damages against UAMS and against Whitlock and Baroni in their official capacities.  The Court also dismissed Drye's ADEA claims against the defendants in their individual capacities.  The Court will now decide on the defendants' motion for summary judgment on Drye's remaining claims.

## II.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Anderson v.*

---

[4] In her deposition, Drye says that she filled out the form, returned it, and received a call from White denying the grievance claim, but she admits that she did not retain a copy of the form and could not remember the specific date on which she sent it in.  Def. Ex. 1 at 62-66.  White's administrative assistant states in an affidavit that no such copy exists, and no other records kept or maintained in her office or White's office exist concerning Drye.  Def. Ex. 5.

*Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005).   The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party carries its burden, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'"   *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1985) (emphasis in original) (quoting Fed. R. Civ. P. 56(e)).   A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party.   *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.   When a nonmoving party cannot make an adequate showing on a necessary element of the action on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

### III.   Rehabilitation and Age Discrimination in Employment Acts

The defendants have moved for summary judgment on Drye's age and disability discrimination claims under the ADEA and the Rehabilitation Act.   In her response, Drye explicitly abandons these two claims.   Drye asserts, however, that she does not abandon her "disability retaliation claim" under the Rehabilitation Act.   The problem is that the only retaliation claim that Drye alleged in her complaint and amended complaint is a claim that the defendants retaliated against her for requesting FMLA leave–a claim that will be addressed later.   No "disability retaliation claim" other than the FMLA claim has been alleged.   Summary judgment is granted to the defendants on all of Drye's claims under the ADEA and the Rehabilitation Act.

## IV.  Due Process

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend XIV, § 1.  Drye alleges that the defendants violated both her liberty and property interests under the Due Process Clause by terminating her without a proper hearing and by damaging her reputation in the process.  The defendants have moved for, and the Court grants, summary judgment on these two procedural due process claims.

### A.      Property Claim

To prevail on her claim that she was discharged from her employment without due process of law, Drye must establish that she had a protected property interest in her employment and that she was deprived of that interest without due process.  *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S. Ct. 1487, 1491, 84 L. Ed. 2d 494 (1985).  Whether an employee has a protected property interest in her employment depends on the employment contract and state law.  *Eddings v. City of Hot Springs, Ark.*, 323 F.3d 596,601 (8th Cir. 2003).  Public employees such as Drye have protected property interests in their employment only "when there are 'contractual or statutory limitations on the employer's ability to terminate an employee,' such as a contractual right to be terminated only for cause." *Bennett v. Watters*, 260 F.3d 925, 927 (8th Cir. 2001) (quoting *Winegar v. Des Moines Indep. Cmty. Sch. Dist.*, 20 F.3d 895, 899 (8th Cir. 1994)).  Generally, in Arkansas, an at-will employee may be fired "for good cause, bad cause, or no reason at all . . . ." *Lynn v. Wal-Mart Stores, Inc.*, 102 Ark. App. 65, 71, 280 S.W.3d 574, 579 (2008).

Drye asserts that UAMS employees are not strictly at will, that at will is only invoked during the probationary period, and that UAMS employees are entitled to a 'name clearing' hearing with

7

regard to any terminations of employment.  Pl.'s Resp. to Def.'s Statement of Undisputed Facts, ¶ 2.
The evidence does not support her assertions.  On the contrary, the UAMS staff handbook states,
"Employment with the University of Arkansas System is governed by an *Employment-at-Will*
doctrine," and "staff employees may be terminated at any time . . . ."  Def. Ex. 6.  The UAMS staff
handbook also provides that employees can be dismissed for cause, but it does not say that they can
be dismissed only for cause.  Drye also relies on a deposition given in a separate case by Charles
White, the UAMS assistant vice chancellor for employee relations.  White testified, however, that
"UAMS is an at-will employer.  You work for the state.  You do not have the right to work for state
government.  State government is an at-will employer.  They can let you go at will."  Pl. Ex. A,
Depo. of Charles White at 24-25.  After testifying that the state is an at-will employer which "can
let you go at will," White added, "Another way of letting a person . . . terminating an employee is
by progressive discipline.  Three strikes and you're out."  *Id*. at 25.  In addition, according to White,
"Gross misconduct is grounds for immediate dismissal."  *Id*.  Still later, White explained that at-will
is rarely invoked at UAMS.  He testified also that "three strikes and you are out" does not apply
during probation; instead, at-will is invoked during probation.  *Id*. at 27.  Contrary to Drye's
argument, however, White never testified that the at-will status of UAMS employees ends with the
completion of their probationary period.  To the contrary, as noted above, White unequivocally
testified that "UAMS is an at-will employer.  They can let you go at will."

There is no genuine issue of material fact on the issue of whether Drye was an at-will
employee: she was.  As an at-will employee, Drye had no protected property interest in her
employment.  Therefore, the defendants are entitled to summary judgment on Drye's claim that she
was deprived of property without due process.

B.      **Liberty Claim**

Drye also claims that her liberty interest in her good reputation was infringed during the course of her termination by statements made public by the defendants, without a hearing, in violation of her right to due process. "An employee's liberty interests are implicated where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges." *Winegar v. Des Moines Indep. Cmty. Sch. Dist.,* 20 F.3d 895, 899 (8th Cir. 1994). Stigma may be established, for example, where the employer's accusations involve dishonesty and immorality. *Id.* Once the liberty interest is implicated, "an unconstitutional deprivation may occur when an employee is not given an opportunity to clear his or her name." *Rush v. Perryman*, 579 F.3d 908, 912 (8th Cir. 2009). To establish that she has been unconstitutionally deprived of a liberty interest, Drye must establish that: (1) she was stigmatized by the employer's statements; (2) those statements were made public by the administrators; and (3) she denied the stigmatizing statements. *Id.* at 912-13.[5]

Drye asserts that she was stigmatized by the charge of gross misconduct. Drye has presented no evidence, however, that the defendants made any statement about her public. Drye asserts that the defendants' statements were published because she has been required to disclose why she was fired when applying for State jobs, her UAMS employment file is subject to a Freedom of

---

[5] The Eighth Circuit has used another version of this test that is similar but not identical, holding that a plaintiff must prove that: "(1) an official made a defamatory statement that resulted in a stigma; (2) the defamatory statement occurred during the course of terminating the employee; (3) the defamatory statement was made public . . .; and (4) an alteration or extinguishment of a right or legal status." *Brown v. Simmons*, 478 F.3d 922, 923 (8th Cir. 2007) (citing *Mascho v. Gee*, 24 F.3d 1037, 1039 (8th Cir. 1994) and *Paul v. Davis,* 424 U.S. 693, 711, 96 S. Ct. 1155, 1165, 47 L. Ed. 2d 405 (1976)). *But see Pollock v. Baxter Manor Nursing Homes,* 716 F.2d 545, 546-47 (8th Cir.) (holding that an employee is not required to prove the falsity of stigmatizing charges).

Information Act request, the information was reported throughout UAMS, and the statements were released to the Employment Security Division.  Drye points to no evidence to support any of these assertions–not even her own deposition–so she has failed to demonstrate that there is a genuine issue of fact for trial, and summary judgment is granted on the issue.

## V.  Section 1983 Sex Discrimination

Forty-two U.S.C. § 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by any person acting "under color of" state law.  Section 1983 does not establish substantive rights, however: "it is merely a vehicle for seeking a federal remedy for violations of federally protected rights." *Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir. 1987).  While Drye now brings her sex discrimination claim under section 1983, having abandoned a direct Title VII claim in her amended complaint, the Eighth Circuit has held that a plaintiff cannot avoid Title VII's exhaustion requirements by bringing the action under section 1983.  A plaintiff "may not circumvent Title VII's filing requirement by utilizing § 1983 as the vehicle for asserting his Title VII claim." *Id.*; *see also Tyler v. Univ. of Ark. Bd. of Trustees*, 628 F.3d 980, 989 (8th Cir. 2011).

"Title VII establishes an administrative procedure which a complaining employee must follow before filing a lawsuit in federal court." *Williams v. Little Rock Municipal Water Works,* 21 F.3d 218, 222 (8th Cir. 1994).  Exhausting these administrative remedies "is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." *Id.*  Before seeking a judicial remedy under Title VII, plaintiffs "must file a discrimination charge with the Equal Employment Opportunity Commission (EEOC) within

180 days after the alleged unlawful employment practice." *Wyrick,* 823 F.2d at 221.  This filing must describe the nature and facts of the charge.  *Williams,* 21 F.3d at 222.  The plaintiff must then receive the notice of the right to sue, after which he has 90 days to file a lawsuit.  *Id.*  Even if not listed in the EEOC charge, a "plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are like or reasonably related to the substance of charges timely brought before the EEOC."  *Id.*  The plaintiff's complaint can only sweep as broadly as the scope of the EEOC investigation that would reasonably be expected to grow out of the EEOC charge.  *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004).

Drye only brought an age discrimination claim in her March 2009 EEOC charge.  She did not claim sex discrimination.  In her narrative section, she only spoke of being demoted and terminated because of her age.  In fact, she said in her EEOC charge that she was discharged and replaced by a female.  The EEOC investigation could not reasonably be expected to include an investigation into sex discrimination.  Drye's sex discrimination claim is not reasonably related to the age discrimination claim that she asserted in the EEOC charge.  Because she failed to exhaust her administrative remedies under Title VII by filing a sex discrimination complaint, Drye's section 1983 sex discrimination claim is barred.  Summary judgment is granted in favor of the defendants on that claim.

## VI.  FMLA

Drye asserts, first, that her job duties were changed and she was demoted in retaliation for her taking FMLA leave; and, secondly, that she was discharged in retaliation for taking FMLA leave and for complaining that she had been demoted due to her FMLA leave.  The first issue is whether her claims relating to the changes in her job duties are barred by limitations.  The second issue is

11

whether Dryer was terminated for taking FMLA leave or for complaining that her job duties were changed due to her taking FMLA leave.

### A.      Statute of Limitations

An action asserting an FMLA violation usually must be brought not later than two years after the last event constituting the alleged violation.  29 U.S.C. § 2617(c)(1).  The period of limitations is extended to three years in the case of a "willful violation."  29 U.S.C. § 2617(c)(2).  The statute does not define "willful," nor has the Supreme Court done so in a FMLA case.  *See Samuels v. Kansas City Missouri School District*, 437 F.3d 797, 803 (8th Cir. 2006).  Adopting the definition of "willful" articulated by the Supreme Court for cases arising under the Fair Labor Standards Act, the Eighth Circuit has held that to establish willfulness a plaintiff must show that the employer either knew or showed reckless disregard for the matter of whether the FMLA prohibited the employer's conduct.  *Hanger v. Lake County*, 390 F.3d 579, 583 (8th Cir. 2004) (quoting *McLaughlin v. Richard Shoe Co.*, 486 U.S. 128, 133, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988)).  An employer's knowledge that the FMLA is "in the picture," however, does not, in itself, show willfulness.  *Hanger*, 390 F.3d at 584; *Samuels*, 437 F.3d at 803.

The period of limitations for an alleged violation of the FMLA regarding the changing of Drye's job duties began running when Drye returned from FMLA leave on September 8, 2008, to find that her job duties had been changed.  *See Hanger*, 390 F.3d at 583 (holding that the FMLA statutory period began running when the plaintiff returned to work and learned that her job responsibilities had been changed).  Drye did not mention her altered job duties in her initial complaint filed on December 9, 2009.  Rather, she first alleged this claim in her amended complaint filed on November 15, 2010–two years and two months after the initial incident.  Therefore, the

defendants argue, Drye's claim regarding the changed job duties should be barred since she missed the two-year deadline.

Drye responds to this argument in two ways.  First, Drye asserts that FMLA claims alleged in the amended complaint relate back to her original complaint pursuant to Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure.  Rule 15(c)(1)(B) states that an amended complaint relates back to the original's date when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading."  In September 2008, Drye's job duties were changed while she was on leave.  In February 2009, she was terminated after being caught falsifying her clocking records–an action to which she admitted.  No evidence in the record connect the two incidents: the alteration of Drye's job duties and her subsequent termination are not the same conduct, transaction, or occurrence.  Drye's claim that her job duties were changed in violation of the FMLA–a claim first asserted in her amended complaint–does not relate back to her original complaint.

Drye next argues that the defendants willfully violated the FMLA when they changed her job duties, so the three-year statute of limitations should apply.  Drye points primarily to Bradley's August 18, 2008, journal entry as evidence that the defendants willfully violated the FMLA when they changed her job duties.  The journal entry states:

> [Baroni]: She is not filling her job expectations and her work is behind.
> [Bradley]: [Drye] is on FMLA protected leave therefore someone else should be doing her work while she is out of the ofc. She is not responsible for her duties. (I checked with Charles H. and she still had CAT leave hrs left)
>
> [Baroni] wanted to redefine her job description.....but [Baroni] did not have any reason other than her work is behind. When asked who should have been doing her job while she was he said him and another mgr. [Bradley]: [Baroni] I don't see a reason for you to change her job role.

> In the end, it came out that Betty [Drye] has been a problem child as a mgr and Judy
> Sims never dealt with her and now Judy is gone and [Baroni] is wanting a easy out.

Def. Ex. 24.  While this journal entry shows that Baroni knew that the FMLA was "in the picture,"
it does not show that he knew that changing Drye's job duties would violate her rights under the
FMLA or that he acted in reckless disregard of whether doing so would violate her rights.  Drye
returned to work at the same job that she had held before taking FMLA leave, with the same
classification, and with the same pay.  What changed was that, due to the reorganization, she was
no longer given the responsibility of supervising clerical employees.

There is no evidence that the defendants knew that they would violate the FMLA or acted
in reckless disregard for whether they were doing so when they changed Drye's job duties.  Drye
cannot prove that the defendants willfully violated the FMLA when they changed her job duties in
September 2008, so her claim that her job duties were changed in retaliation for her taking FMLA
leave is governed by the two-year period of limitations provided in 29 U.S.C. § 2617(c)(1).  Drye
amended her complaint to allege that claim more than two years later–on November 15, 2010.
Drye's claim is barred by limitations.

**B.      Termination**

An employer is prohibited from interfering with, restraining, or denying an employee's
exercise of or attempted exercise of any right contained in the FMLA.  29 U.S.C. § 2615(a)(1).
Interference "occurs when an employer's action deters or attaches negative consequences to an
employee's exercise of FMLA rights." *Estrada*, 616 F.3d at 871.  Examples of interference include
"discouraging an employee from using such leave" and "manipulation by a covered employer to
avoid responsibilities under FMLA . . . ."  29 C.F.R. § 825.220(b) (2006).  To succeed on a claim
for interference under the FMLA, Drye must show that she was denied substantive FMLA rights for

14

a reason connected with her FMLA leave. *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006); *Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 877 (10th Cir. 2004). While it is not necessary for an employee to prove an employer's intent, *Stallings*, 447 F.3d at 1050, the FMLA is not a strict-liability statute. *Throneberry*, 403 F.3d 972, 977 (8th Cir. 2005). Thus, an employer who "interferes with FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights." *Bacon v. Hennepin County Med. Ctr.*, 550 F.3d 711, 715 (8th Cir. 2008) (citing *Throneberry*, 403 F.3d at 977).

An employer may not consider "an employee's use of FMLA leave as a negative factor in an employment action." *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir. 2006) (quoting *Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002)). Because direct evidence can be difficult to come by, especially in the employment context, an employee can prove retaliation through circumstantial evidence using the *McDonnell Douglas* burden-shifting analysis. *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002). *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973). To establish a *prima facie* action of retaliation, Drye must show (1) that she "engaged in protected conduct" by exercising her FMLA rights; (2) that she suffered a materially adverse employment action; and (3) that there was a causal link between the protected activity and the adverse action. *Wierman v. Actiony's General Stores*, 638 F.3d 984, 999 (8th Cir. 2011). If Drye makes this showing, the burden shifts to the defendants to present a legitimate, non-discriminatory reason for Drye's termination. *Hite*, 446 F.3d at 865. Once the defendants provide such a reason, the burden shifts back to Drye to demonstrate that the stated reason was merely a pretext for retaliation. *Id.*

Drye has presented no evidence that her termination had anything to do with the FMLA leave from which she had returned five months earlier.   Conversely, the defendants have presented undisputed evidence that Drye was terminated because she falsified her clock-in time.  Drye attempts to paint the period stretching from her modified job duties to the termination as a "string of events causally related," but the attempt fails as she has provided no evidence of a causal connection between her FMLA leave and her termination.  Because she cannot show a causal link between her protected activity and her termination, she cannot meet her burden of establishing a *prima facie* case. Not only that, she cannot show that the employer's legitimate reason for her termination–that she falsified her clock-in time–is a pretext for unlawful discrimination or retaliation.   Therefore, summary judgment is granted in favor of the defendants on Drye's claim that she was terminated in retaliation for conduct protected by the FMLA.

## CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment is granted. Drye's complaint is dismissed with prejudice.

IT IS SO ORDERED this 23rd day of September, 2011.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE